# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3725 | **DATE** | SEPTEMBER 23, 2004 |
| **CASE TITLE** | LADORIS WALKER v. METROPOLITAN PIER AND EXPOSITION AUTHORITY, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for partial summary judgment [21-1] is denied. Defendants' amended motion for summary judgment [36-1] is granted. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's cause of action with prejudice.

(11) ■ [For further detail see attached Memorandum Opinion and Order.]

| | No notices required, advised in open court. | | **4** | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 2 8 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | VM | 44 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | SEPT. 23, 2004 | |
| cw | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | MQM mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LADORIS WALKER,                          )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )  No. 03 C 3725
                                         )
METROPOLITAN PIER AND                    )
EXPOSITION AUTHORITY,                    )
ELLEN BARRY, and TERRY                   )
ABBRUSCATO,                              )
                                         )
                    Defendants.          )

## MEMORANDUM OPINION AND ORDER

SEP 2 8 2004

Plaintiff LaDoris Walker has been an employee of defendant Metropolitan Pier and Exposition Authority ("MPEA"), a governmental entity, since 1996. Also named as defendants are Ellen Barry and Terry Abbruscato, who are supervisory employees of the MPEA. Plaintiff alleges the MPEA violated the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), claiming that a male MPEA employee with the same job classification as plaintiff was paid more than plaintiff. Plaintiff also alleges that the MPEA violated the EPA by retaliating against her for complaining about equal pay violations. See 29 U.S.C. § 215(a)(3). As to the individual defendants, plaintiff brings a claim pursuant to 42

44

U.S.C. § 1983 in which she alleges that they unconstitutionally discriminated against and/or retaliated against her. Defendants have moved for summary judgment as to all claims. Plaintiff has moved for partial summary judgment on liability as to the Count I EPA claim of being paid less than a male worker.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991, 994-95 (7th Cir. 2003); Palmer v. Marion County, 327 F.3d 588, 592 (7th Cir. 2003); Abrams v. Walker, 307 F.3d 650, 653-54 (7th Cir. 2002). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001); Wollin v. Gondert, 192 F.3d 616, 621-22 (7th Cir. 1999). The nonmovant, however, must make a showing sufficient to establish any essential element for which she or it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Binz v. Brandt Construction Co., 301 F.3d 529, 532 (7th Cir. 2002); Traylor v. Brown, 295 F.3d 783, 790 (7th Cir. 2002). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See NLFC, Inc. v. Devcom

Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852 (1988). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" Logan, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." Id. (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Hence, a "metaphysical

- 3 -

>           doubt" regarding the existence of a genuine fact
>           issue is not enough to stave off summary
>           judgment, and "the nonmovant fails to demonstrate
>           a genuine issue for trial 'where the record taken
>           as a whole could not lead a rational trier of
>           fact to find for the non-moving party . . . .'"
>           Logan, 96 F.3d at 978 (quoting Matsushita Elec.
>           Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
>           574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538
>           (1986)).

Outlaw, 259 F.3d at 837.

Defendants' summary judgment motion will be considered first. Resolving all genuine factual disputes and drawing all reasonable inferences in plaintiff's favor, the facts assumed to be true for purposes of defendants' summary judgment motion are as follows. Plaintiff worked in the MPEA's Information Services Department ("ISD"). Barry was the Chief of ISD. Abbruscato was the Director of Operations and Security in ISD. Except for five months in 2003, plaintiff has been assigned to the Operations Group in ISD. Prior to joining ISD, plaintiff had one years' experience as a data processor inputting data and experience as a cashier, shelf stocker, and bartender, as well as classes at the MPEA's Hospitality Academy. Plaintiff did not previously have any formal education or training on the maintenance or repair of computers or printers.

In 1996 at the MPEA, plaintiff initially worked as an AS400 operator who printed reports and backed up the AS400 data. She also worked on the Help Desk as a Level 1 employee answering the Help Desk telephone and routing the calls. In 1997,

plaintiff was promoted to her current position of a Level II
Network System Engineer. After taking a five-day course,
plaintiff received a Novelle Groupwise Administrator certificate
in February 2001. Plaintiff scored 623 out of 800, with 614
being a passing score. After taking another five-day course,
plaintiff received a Novelle Network Administrator certificate in
2001. After taking another five-day course, plaintiff received a
Novelle Advanced Administrator certificate in July 2002. On that
certification test, plaintiff scored 634 out of 800, with 596
being a passing score.

Mark Hankins is also a Level II Network System Engineer
for the MPEA. Plaintiff contends he is a comparable male who has
been paid more than she has. Hankins had been an emergency
medical technician in the United States Army. After that, he
worked five years for electrical contractors followed by two
years in the electrical department of a hardware store. In 1993,
Hankins was hired by Sentinel Technologies, Inc., which
specializes in computer hardware repair services. Initially,
Hankins worked a year and one-half in Sentinel's computer parts
department, followed by a year in the audit department.
Approximately December 1996, Hankins moved to the hardware
support department, where he repaired all types of computer
hardware components and printers. He remained in that position
for approximately five years. During his time with Sentinel,
Hankins took various Hewlett Packard printer classes and was

certified for more than ten types of printers. Hankins obtained an A+ Certification, which is an industry standard certification for computer hardware repairs. This certification is considered to be equivalent to 500 hours (approximately 12 workweeks) of hands-on experience in the lab or field. It is intended to certify that the person has the baseline or foundation knowledge for an entry-level IT professional or PC technician.

From March 31, 1998 until June 30, 2002, the MPEA retained Sentinel to provide hardware maintenance services. In 1999, as a Sentinel employee, Hankins provided full-time services for the MPEA in ISD. Hankins continued in that position until hired by the MPEA in January 2001. During his last year with Sentinel, Hankins earned $36,000, plus a $4,000 travel allowance.

Hankins applied for a position at the MPEA after the opening was posted. At a job interview, Hankins told Abbruscato that he would not leave Sentinel unless he received a salary of at least $42,000 per year. There being no evidence to the contrary, it must be taken as true that Hankins would not have accepted the position if offered less than $42,000.[1] That is the salary that was offered and accepted when Hankins was hired. At the time, plaintiff was being paid $39,330. Thereafter, each July 1, plaintiff and Hankins received the same percentage

---

[1] Plaintiff objects that this evidence is inadmissible. A person's statement, however, is admissible evidence of his intent or mental state at the time the statement was made. See Fed. R. Evid. 803(3). This evidence is also admissible as evidence of the MPEA's understanding of Hankins's intent at the time.

increases to their salaries. Hankins was hired to perform essentially the same work that he had been performing as a Sentinel consultant. He was hired in the same job classification as plaintiff. Although plaintiff performed both hardware maintenance and network administration work, the substantial majority of her work consisted of the latter while almost all of Hankins's work was hardware maintenance. Following the hiring of Hankins, the MPEA phased out the use of Sentinel for the maintenance work previously performed by Hankins as a Sentinel consultant under a contract costing the MPEA approximately $175,000 per year.

In April 2003, Barry temporarily assigned plaintiff to work with J.D. Dragus, the Senior WAN/LAN Engineer and acting Internet Business Coordinator of the Internet Services Group. The Internet Services Group is part of ISD. Dragus had requested additional assistance and the decision to assign plaintiff was made sometime prior to her April 2, 2003 transfer. Barry has stated that she assigned plaintiff because she had customer service and organizational skills, as well as technical skills.

During the temporary assignment, plaintiff's wages, benefits, and hours stayed the same. However, Internet Services Group was located in a different building of the McCormick Place Complex than most of ISD. Plaintiff did not like being isolated from many of the other employees. The work environment was inferior in that, unlike the Operations Group location, there

were no windows and the office furniture was broken, musty, and smelled bad. The duties plaintiff performed in the Internet Services Group were simpler and less challenging than the work she had been doing for the Operations Group. Initially, plaintiff was not told that the assignment was temporary. In August 2003, plaintiff returned to her position in the Operations Group.

Plaintiff does not point to any evidence supporting that, prior to April 2003, she complained to Barry or Abbruscato, regarding any pay disparity. See Pl. Response to Def. Stmt. of Uncontested Facts ¶ 72. Plaintiff expressly states that, prior to that time, she avoided raising any issue about disparate pay because she expected to be promoted and did not want to jeopardize her promotion. There is evidence to support that, in late March 2003, plaintiff complained to Barry about how Abbruscato had treated her in summer and fall 2002, including retaliation and discrimination. On April 18, 2003, plaintiff indicated to Barry that there was retaliation and discrimination occurring in the Operation Group. Plaintiff indicated that Abbruscato was discriminating and left open the possibility that Barry was as well. On May 5, 2003, plaintiff filed an internal complaint with the MPEA's Department of Business & Workforce Diversity. On the complaint form, plaintiff described the nature of the discrimination as: "I expressed retaliation concerns to my immediate Senior Director (Ellen Barry). Ellen ignored my

concerns and relocated my position to Lakeside Center."
Plaintiff also stated that she has "documentation [and] witnesses
. . . that I was moved to another Building after expressing my
concerns." Attached to the internal complaint were apparent
notes of incidents from various dates, some of which refer to
"retaliation," but none of which identify the motive for the
purported retaliation. The internal complaint contains no
mention of a pay disparity.

In addition to the temporary transfer to Internet
Services, plaintiff provides evidence that Barry treated her
negatively by (a) ignoring plaintiff when they passed in the
office; (b) omitting plaintiff from email lists; and
(c) threatening to take away plaintiff's cell phone.

No showing of intentional discrimination is necessary in
order to succeed on an EPA claim. Cullen v. Indiana University
Board of Trustees, 338 F.3d 693, 698 (7th Cir. 2003). Plaintiff
may establish a prima facie case of an EPA violation by showing:
"(1) higher wages were paid to a male employee, (2) for equal
work requiring substantially similar skill, effort and
responsibilities, and (3) the work was performed under similar
working conditions." Id. (quoting Stopka v. Alliance of American
Insurers, 141 F.3d 681, 685 (7th Cir. 1998)). In the present
case, the parties disagree as to whether the evidence supports
the second element.

"In determining whether two jobs are equal, the crucial inquiry is 'whether the jobs to be compared have a 'common core' of tasks, i.e., whether a significant portion of the two jobs is identical.'" Id. (quoting Fallon v. State of Illinois, 882 F.2d 1206, 1209 (7th Cir. 1989)). Even if the jobs have the same common core, it must be considered whether any additional tasks make the jobs substantially different. Cullen, 338 F.3d at 698. In comparing job duties, three separate elements are considered: skill, effort, and responsibility. 29 U.S.C. § 206(d)(1); Cullen, 338 F.3d at 698. The focus must be on job duties actually performed, not the job description or job title. Id. at 700 (quoting Dey v. Colt Construction & Development Co., 28 F.3d 1446, 1461 (7th Cir. 1994)).

In this case, the issue regarding whether the jobs were equal goes to how the common core of tasks is viewed. The evidence supports that both plaintiff and Hankins could be assigned requests that came into ISD's Help Desk. However, most of the time plaintiff was assigned networking tasks while Hankins was almost exclusively assigned hardware maintenance and repair. Plaintiff and Hankins performed and were responsible for computer related tasks, but plaintiff spent most of her time performing one subset of those tasks while Hankins spent most of his time performing a different subset of those tasks. Plaintiff was primarily a networking specialist while Hankins was primarily a hardware specialist. Therefore, despite some overlapping of

tasks, the two generally performed different tasks. It cannot be held that the work of a networking problem shooter and a hardware problem shooter are substantially equal work since the tasks each primarily performs are different.² Compare Lewis v. Smith, 255 F. Supp. 2d 1054, 1059-60 (D. Ariz. 2003); Jordan v. CSX Intermodal, Inc., 991 F. Supp. 754, 758 (D. Md. 1998). Plaintiff cannot show that she and a male employee performed equal work.

Moreover, Hankins had additional qualifications and more extensive experience with computer hardware maintenance and repair when he was hired in 2001 than did Walker. He had the A+ Certification and HP printer certification for at least ten different types of printers; plaintiff did not. He had five years' experience maintaining and repairing all different makes and models of computers, printers and monitors; plaintiff did not. Because of his experience, Hankins was able to perform some computer related tasks that plaintiff was not specifically trained to perform. Hankins's computer experience was a legitimate, nondiscriminatory reason for the wage disparity. The MPEA was paying Sentinel Technologies over $175,000 per year, a portion of which payment included Hankins's time spent at the

---

²Arguably, an employee who specializes in repairing and maintaining hardware is not performing tasks that require greater skill and effort than an employee who specializes in resolving networking issues. That, however, is not an issue for an EPA claim. Comparable worth claims are not cognizable under the EPA. Lang v. Kohl's Food Stores, Inc., 217 F.3d 919, 923 (7th Cir. 2000), cert. denied, 531 U.S. 1076 (2001).

MPEA working full time as a computer consultant. By bringing Hankins in-house, the MPEA was able to save money. By July 2002, the MPEA was able to cancel the Sentinel contract, reassign the work done by Sentinel to others within the MPEA including primarily Hankins, and to save over $100,000 annually. This also is proof of Hankins's superior skills.

Plaintiff could still have an EPA retaliation claim even if she does not have a viable claim that the equal pay provisions of the EPA were violated. However, there is no evidence that plaintiff suffered any retaliatory conduct after she made a complaint about equal pay. Plaintiff does not even point to evidence of when she first complained of equal pay. It is undisputed that her first complaint about equal pay occurred sometime later than the filing of her May 2003 internal complaint. The transfer to Internet Services occurred before that time. Even assuming any of the other allegedly retaliatory conduct was sufficiently adverse to support an EPA retaliation claim, plaintiff does not point to evidence supporting that any of the allegedly retaliatory conduct occurred after she first raised complaints of equal pay with Barry, the supervisor who allegedly engaged in the retaliatory conduct. Therefore, plaintiff's EPA retaliation claim against defendant MPEA must be dismissed. See Fyfe v. City of Fort Wayne, 241 F.3d 597, 602 (7th Cir. 2001).

Still to be considered are the § 1983 claims against Barry and Abbruscato. The nature of the § 1983 claims that plaintiff is still pursuing are unclear. In response to the motion for summary judgment as to the claims against the individual defendants, plaintiff refers to "an Equal Protection Clause violation," having "engaged in statutorily protected activity," and being a "member of a protected class under the Equal Pay Act." Pl. Memo. in Opposition to Summ. Judgment at 13. To the extent plaintiff seeks to hold the individual defendants liable under the EPA, those claims would be subject to dismissal for the same reason that the EPA claims against the MPEA were dismissed.[3]

To the extent plaintiff contends the individual defendants intentionally discriminated against her because she is female, she has not pointed to a male who was sufficiently similarly situated, but treated differently. Plaintiff has not presented evidence from which a reasonable trier of fact could

---

[3] Since any EPA claim against the individual defendants is otherwise subject to dismissal, it is unnecessary to determine whether supervisors may be individually liable under the EPA, which is contained within the Fair Labor Standards Act. Compare Herman v. RSR Security Services, Ltd., 172 F.3d 132, 139 (2d Cir. 1999); Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668 (1st Cir. 1998); and Snider v. Belvidere Township, 1998 WL 920400 *2-3 (N.D. Ill. Dec. 28, 1998), with Harris v. City of Harvey, 992 F. Supp. 1012, 1013-14 (N.D. Ill. 1998). See also Luder v. Endicott, 253 F.3d 1020 (7th Cir. 2001) (holding that individual supervisors may be liable under the FLSA, but that the claims against supervisory employees of the state would be barred by the Eleventh Amendment).

infer that she was treated less favorably because of intentional sex discrimination.

To the extent plaintiff contends she was retaliated against for opposing discrimination or other expression, she has not shown that she has engaged in any speech that is protected by the First Amendment. Plaintiff cannot succeed on her retaliation claim unless she shows that she spoke out on a matter of public concern. Gustafson v. Jones, 290 F.3d 895, 906 (7th Cir. 2002); Snider v. Belvidere Township, 216 F.3d 616, 620 (7th Cir. 2000). An employee complaining to a supervisor about her own treatment does not constitute speaking out on a matter of public concern. See Gustafson, 290 F.3d at 908; Snider, 216 F.3d at 620; Yatvin v. Madison Metropolitan School District, 840 F.2d 412, 418-20 (7th Cir. 1988); Berry v. Illinois Department of Human Services, 2003 WL 22462547 *16 (N.D. Ill. Oct. 29, 2003). Plaintiff cannot succeed on any constitutional retaliation claim she may be bringing against the individual defendants.

Since defendants are entitled to summary judgment on all claims, it is unnecessary to separately consider plaintiff's summary judgment motion.

IT IS THEREFORE ORDERED that plaintiff's motion for partial summary judgment [21-1] is denied. Defendants' amended motion for summary judgment [36-1] is granted. The Clerk of the Court is directed to enter judgment in favor of defendants and

against plaintiff dismissing plaintiff's cause of action with prejudice.

ENTER:

William T. Hoyt
UNITED STATES DISTRICT JUDGE

DATED: SEPTEMBER 23, 2004